IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISON

| | | |
|---|---|---|
| JENNIFER VALES on behalf of S.M., | ) | CASE NO. 1:21-CV-01648-CEH |
| Plaintiff, | ) ) ) | |
| v. | ) ) | MAGISTRATE JUDGE CARMEN E. HENDERSON |
| SOCIAL SECURITY ADMINISTRATION, | ) ) ) | |
| Defendant, | ) ) ) | MEMORANDUM OPINION AND ORDER |

**I.    Introduction**

Plaintiff, S.M. ("Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Supplemental Security Income ("SSI"). This matter is before me by consent of the parties under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 10). Because the ALJ's findings are supported by substantial evidence, the Court AFFIRMS the Commissioner's final decision denying S.M. SSI.

**II.    Procedural History**

On May 31, 2019, Jennifer Vales, mother of S.M., filed an application for SSI on behalf of S.M., alleging a disability onset date of June 3, 2010 and claiming she was disabled due to attention deficit hyperactivity disorder ("ADHD"), a speech and language impairment, a learning disorder, disruptive mood dysregulation disorder, and a history of lead exposure. (ECF No. 9, PageID #: 178). The application was denied initially and upon reconsideration, and S.M. requested a hearing before an administrative law judge ("ALJ"). (ECF No. 9, PageID #: 122, 128, and 136). On September 9, 2020, an ALJ held a hearing, during which S.M., represented by counsel, and her mother testified. (ECF No. 9, PageID #: 80). On October 21, 2020, the ALJ

issued a written decision finding S.M. was not disabled. (ECF No. 9, PageID #: 41). The ALJ's decision became final on June 21, 2021, when the Appeals Council declined further review. (ECF No. 9, PageID #: 35).

On August 24, 2021, S.M. filed her Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 11, 14). S.M. asserts the following assignment of error:

> The ALJ found that S.M.'s severe impairments were not functionally equal to the severity of a listed impairment. This finding is unsupported by substantial evidence when the evidence demonstrates that S.M. has marked limitations in two domains of functioning.

(ECF No. 11 at 1).

### III. Background

#### A. Relevant Hearing Testimony

The ALJ summarized the relevant testimony from S.M.'s hearing:

> The claimant's mother, Jennifer Vales, testified she lives with the claimant and her four other children. Ms. Vales said the claimant gets along with her four other siblings, aside from some normal sibling rivalry. Ms. Vales stated the claimant is easily distracted and does not complete tasks. Ms. Vales indicated the claimant will not clean her room or complete chores unless she is supervised; however, the claimant is able to independently care for her personal hygiene. Ms. Vales reported poor reading skills and frequent off task behavior. Ms. Vales indicated one incident in the school bathroom, but denied behavioral problems otherwise. Ms. Vales testified the claimant received special education services for about 15 minutes per day, during which she was pulled out of the regular classroom for assistance with comprehension and understanding. She also indicated participation in school therapy. Ms. Vales said the claimant is doing better, but is still reading at a second grade level. Ms. Vales testified to easy distraction, as the claimant could maintain attention for only a few minutes before becoming distracted, if Ms. Vales is not there. Ms. Vales indicated when she is present, she can keep the claimant more focused. Ms. Vales said remote schooling started the day prior to hearing. She

>   confirmed she has to go over everything with the claimant because of poor reading skills.

(ECF No. 9, PageID #: 49).

>   **B.     Relevant Medical Evidence**

The ALJ also summarized S.M.'s health records and symptoms:

>   The claimant underwent a well-child visit with Anita Wilson, M.D., of Neon, on April 11, 2018 (Exhibit 5F/1-5). Treatment notes indicate a history of elevated blood lead levels, and the claimant was currently in the second grade and on an individualized education plan (IEP) for reading (Id.). The claimant's mother reported poor attention span and academic performance (Id.). Examination revealed normal physical and mental status findings, as the claimant was oriented, with age appropriate behavior (Id.). Dr. Wilson assessed the claimant with routine child health exam without abnormal findings, anemia, and abnormal lead level in blood, and instructed the claimant to continue school counseling through Beech Brook and follow up with a psychiatrist at Beech Brook (Id.).

>   Laboratory testing conducted in June 2018 revealed a high lead level of 19 (Exhibit 5F/20). In July 2018, the claimant was referred to MetroHealth Medical center Pediatric Lead Clinic for evaluation and treatment of persistent high lead level of 19, despite prior chelation treatment (Exhibit 5F/11, 13, 15).

>   On May 3, 2018, the claimant underwent evaluation with Cindy Ward, LSW, of Murtis Taylor (Exhibit 2F). The claimant's mother reported disruptive classroom behaviors, as the claimant talks out, and does not stay focused or sit still, in addition to learning problems stemming from behavioral issues (Id.). The claimant was currently failing at school, despite receipt of special education services, and Ms. Ward noted references to attention problems and suspected attention deficit hyperactivity disorder (ADHD) in an ETR (Id.). However, the claimant was respectful towards others and had friends at school (Id.). Mental status examination was unremarkable, as the claimant was cooperative and well groomed, with average demeanor and activity, clear speech, logical thought processes, normal thought content, a euthymic mood, full affect, average estimated intelligence, fair judgment, and age appropriate insight (Id.). Nevertheless, Ms. Ward diagnosed the claimant with ADHD, combined presentation, and oppositional defiant disorder (ODD) (Id.).

On August 7, 2018, the claimant underwent initial evaluation with Nida Muzaffar, M.D., of University Hospitals (UH), Child and Adolescent Psychiatry (Exhibit 4F/15-17). Dr. Muzaffar noted a history of ADHD and toxic lead exposure at 5 years old, and the claimant's pediatrician had noted concerns about ADHD and developmental delay due to lead exposure (Id.). The claimant was currently in the 2nd grade and on an IEP for ADHD (Id.). The claimant was delayed in reading, performing at the kindergarten level (Id.). The claimant's mother reported difficulty with concentration, focus, and sitting still, wandering thoughts, and poor academic performance (Id.). Mental status examination was unremarkable, as the claimant was alert, oriented, cooperative, and well groomed, with average demeanor and eye contact, calm behavior, clear speech, age appropriate language and fund of knowledge, a euthymic mood, full affect, normal thought processes and thought content, age appropriate memory, intact cognition, estimated average intelligence, and good insight and judgment (Id.). Dr. Muzaffar diagnosed the claimant with ADHD and lead exposure, and prescribed Adderall XR 10 mg, noting the claimant would benefit from starting a stimulant to target symptoms, given apparent difficulty concentrating and focusing in school (Id.). Dr. Muzaffar ordered follow up in three weeks (Id.).

Medication management records from August 2018 through October 2019 confirm improvement with medication, as the claimant's mother noted the claimant was doing well [at] home and school, with improved attention span and reading level (Exhibit 4F/4-14; 7F). She noted the claimant's teachers were pleased, given that she did not need as much close monitoring, and school counseling was going well (Id.). The claimant's mother indicated the claimant did not do great on Ohio Standardized Testing, but she did not do horrible either (Id.). The claimant attended summer school during 2019, which reportedly went well (Id.). In September 2019, the claimant's mother reported increased difficulty with focus and concentration at school (Exhibit 7F/7). However, no other major concerns or mood issues were reported (Exhibit 4F/4-14; 7F). The claimant's mother consistently denied major medication side effects (Id.). Mental status examinations revealed fidgeting and restlessness in September 2019 (Exhibit 7F/8), but were otherwise consistently unremarkable (Exhibit 4F/4-14; 7F). Specifically, the claimant was alert, oriented, well groomed, and cooperative, with average, friendly demeanor, average eye contact, otherwise calm behavior, clear speech, age appropriate language and fund of knowledge, a euthymic mood, a full affect, goal-directed, logical thought processes, normal thought

> content without psychosis, age appropriate memory, intact cognition, average estimated intelligence, and good insight and judgment (Id.). Dr. Muzaffar refilled Adderall XR 10 mg, and in September 2019, increased the medication dosage to 15 mg (Id.). The claimant tolerated the medication well, with improvement in symptoms, and no significant side effects, as her weight remained stable, in the 52nd to 63rd percentile range (Id.). In October 2019, the claimant's mother reported improvement on the increased medication dose (Exhibit 7F/4).
>
> In an undated To Whom It May Concern letter received in March 2020, Pauline Cogeni, MSW, LSW, of Beech Brook, noted the claimant had been undergoing treatment since March 2017 for ADHD and disruptive mood dysregulation disorder (Exhibit 8F). Ms. Cogeni noted symptoms including anger, disruptiveness in the classroom, poor focus and concentration, and inability to stay on task (Id.). Ms. Cogeni noted an IEP for learning disabilities, and she indicated the claimant sees the intervention teacher daily for several hours for assistance with schoolwork (Id.). Ms. Cogeni noted the claimant does not keep up with normal curriculum at this time, does not understand the work, and needs assistance to complete her work (Id.). She indicated the claimant does not process well and has cognitive functioning issues, due to severe ADHD and disruptive mood dysregulation disorder, for which pharmacological management was necessary (Id.). Ms. Cogeni indicated treatment plan objectives with focus on decreasing negative attention seeking/behaviors, improving appropriate communication with others, and identifying triggers to anger and acting out behaviors (Id.). She confirmed medications are medically necessary (Id.).

(ECF No. 9, PageID #: 49-51).

### IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

> 3. The claimant has the following severe impairments: attention deficit hyperactivity disorder (ADHD), speech and language impairment, learning disorder, disruptive mood dysregulation disorder, and history of lead exposure (20 CFR 416.924(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

> 5. The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a).
>
> 6. The undersigned finds that the claimant has not been disabled, as defined in the Social Security Act, since April 29, 2019, the date the application was filed (20 CFR 416.924(a)).

(ECF No. 9, PageID #: 45-57).

V.     **Law & Analysis**

    A.     **Standard of Review**

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

    B.     **Standard for Disability**

An individual under the age of eighteen is considered disabled if he "has a medically

determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 1382c(a)(3)(A). The regulations provide a three-step process for evaluating a child's disability claim. 20 C.F.R. § 416.924(a). First, the ALJ must determine whether the claimant is engaged in substantial gainful activity. *Id*. § 416.924(b). Second, the ALJ must establish whether a claimant has a severe medically determinable impairment. *Id*. § 416.924(d). Third, the ALJ must consider whether the claimant has an impairment or combination of impairments that meets or medically equals the listings. *Id*. If a severe impairment does not meet or medically equal any listing, the ALJ must decide whether it results in limitations that functionally equal the listings. *Id*. § 416.926a.

## VI. Discussion

S.M. raises one issue on appeal. S.M. argues that she functionally equals Listings 112.08, 112.02, and 111.09, and is therefore disabled. S.M. argues that the ALJ's decision to the contrary was not supported by substantial evidence. At Step 3, the ALJ must decide whether an impairment or group of impairments meet, medically equal, or functionally equal a listed impairment. 20 C.F.R. § 416.924(d). In determining whether a claimant functionally equals a Listing, the ALJ evaluates the claimant's functioning in terms of six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. *Id*. § 416.926a(b)(1). If the ALJ finds that the claimant has an extreme limitation in one of the domains of functioning or a marked limitation in two domains, then the claimant functionally equals a Listing. *Id*. § 416.926a(d).

S.M. asserts that the ALJ incorrectly found that she does not functionally equal the

Listings. (ECF No. 11 at 9). The ALJ concluded that S.M. had a marked limitation in acquiring and using information, so a finding of a marked limitation in a second domain would mean S.M. functionally equals the Listings. (ECF No. 9, PageID #: 53). S.M. argues that she has a marked limitation in attending and completing tasks. In his decision to the contrary, the ALJ stated:

> The objective medical and educational evidence of record confirms ADHD with inattention, distractibility, and impulsivity, treated with individual, school based counseling, increased ADHD medications prescribed by a pediatric psychiatrist, and special education services administered by way of an IEP (Exhibit 2F, 4F, 5F, 7F, 8F, 12E, 1F, 3F, 8E). The claimant continues to struggle with organization, sustaining attention and focus, starting and completing work, and working independently at a decent pace, despite use of medication, prompting by teachers, and various accommodations and educational supports (Id.). However, the claimant's ADHD symptoms have improved significantly with use of Adderall (Exhibit 4F, 7F). In fact, although the claimant continues to demonstrate ADHD symptoms [at] school, mental status examinations have revealed only occasional fidgeting and restlessness, with otherwise calm behavior and average activity (Exhibit 2F, 4F, 7F). Although the claimant is unable to maintain sufficient attention and concentration to perform chores, she is able to independently care for her personal hygiene (Exhibit 5E, Hearing Testimony). As a result of this evidence, the undersigned agrees with the state disability determination services consultants, and finds less than marked limitation in attending and completing tasks.

(ECF No. 9, PageID #: 54).

S.M. argues that she has a marked limitation in attending and completing tasks because her ADHD symptoms severely interfere with her ability to complete schoolwork and chores, focus on tasks, and work independently. (ECF No. 11 at 10-11). The Commissioner responds that the ALJ provided substantial evidence for his decision. (ECF No. 14, PageID #: 518). The ALJ relied on the evaluations from both S.M.'s doctors and S.M.'s mother, who all stated that S.M.'s symptoms greatly improved with medication. (ECF No. 9, PageID #: 50-51). The ALJ acknowledged that S.M.'s doctor had to adjust the dosage of her medication when S.M.

symptoms began to worsen, but he also noted the doctor's evaluation that the new dosage appeared to be effective. (ECF No. 9, PageID #: 50-51). The ALJ also relied on the mental status examinations conducted by S.M.'s psychiatrist and social workers, who all wrote that S.M. experienced minimal restlessness, was cooperative, and had an average demeanor and activity. (ECF No. 9, PageID #: 50). Further, the ALJ explained that S.M.'s mother testified to her daughter's improved concentration and reading level. (ECF No. 6, PageID #: 50).

In her brief, S.M. relies heavily on SSR 09-4p as evidence that the ALJ's decision is incorrect. Specifically, S.M. relies on the examples that SSR 09-4p provides as it relates to ADHD symptoms, typical functions for children between the ages of 6 and 12, and limitations in the domain of attending and completing tasks. S.M. argues that because she exhibits some of the symptoms and behaviors listed in SSR 09-4p, the ALJ should have found a marked limitation in the domain of attending and completing tasks. Though S.M.'s ADHD symptoms and behaviors coincide with some of the examples provided in SSR 09-4p, that is not enough to establish that the ALJ's decision was incorrect. The lists provided in SSR 09-4p are not exhaustive, nor do they mandate that the ALJ must make a finding of disability if one or more of these examples is present. Additionally, the ALJ did not deny that S.M. experiences some limitations in this domain. (ECF No. 9, PageID #: 54). Instead, he asserted that those limitations do not rise to the level of marked so as to find a disability. (ECF No. 9, PageID #: 54). Therefore, S.M.'s use of SSR 09-4p is unpersuasive in establishing that the ALJ did not use substantial evidence in rendering his decision.

The Court cannot overturn the ALJ's decision merely because S.M. has pointed to favorable evidence. *Greene v. Astrue*, No. 1:10-cv-0414, 2010 WL 5021033, at *4 (N.D. Ohio Dec. 3, 2010) ("[A] claimant does not establish a lack of substantial evidence by pointing to

evidence of record that supports her position. Rather, [the claimant] must demonstrate that there is not sufficient evidence in the record that would allow a reasoning mind to accept the ALJ's conclusion."). In this case, given that the ALJ has provided numerous reasons based on the evidence to support its nondisability finding, S.M. is unable to show that the ALJ failed to use substantial evidence in making his determination. Accordingly, the ALJ did not err, and S.M.'s arguments are without merit.

## VII. Conclusion

Based on the foregoing, the Court AFFIRMS the Commissioner's final decision denying S.M. SSI.

**IT IS SO ORDERED.**

Dated: August 3, 2022

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE